# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

PATSY SLATER on behalf of                                                                                    PLAINTIFF
BRANDON D. SLATER

v.                                            No. 3:06CV00141 JLH

MICHAEL J. ASTRUE, Commissioner,
SOCIAL SECURITY ADMINISTRATION[1]                                                            DEFENDANT

## OPINION

Patsy Slater has appealed the final decision of the Commissioner of the Social Security Administration to deny her claim for Supplemental Security Income (SSI) on behalf of her daughter, Brandon Danielle Slater. Both parties have filed appeal briefs and the case is ready for decision.

The Court reviews to determine whether the Commissioner's decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g) (2000); *Moore ex rel. Moore v. Barnhart*, 413 F.3d 718, 721 (8th Cir. 2005); *see Young ex rel. Trice v. Shalala*, 52 F.3d 200, 201-02 (8th Cir. 1995) (applying the substantial evidence standard of review in a child benefits case). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 242 (1971) (quoting *Consol. Edison Co. of NY v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 207, 83 L. Ed. 126 (1938)); *see also Moore ex rel. Moore v. Barnhart*, 413 F.3d at 721.

In assessing whether the evidence supporting the decision is substantial, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial

---

[1] Michael J. Astrue was sworn in as the Commissioner of Social Security on February 12, 2007. He is therefore substituted for Jo Anne B. Barnhart pursuant to Fed. R. Civ. P. 25(d)(1).

evidence would have supported a different decision. *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

The Commissioner found Brandon not disabled within the meaning of the Social Security Act. The only issue before this Court is whether the Commissioner's decision that Brandon was not disabled within the meaning of the Act is supported by substantial evidence. The statute provides:

> An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i) (2000).

After conducting an administrative hearing, the Administrative Law Judge[2] concluded that Brandon had not been disabled within the meaning of the Social Security Act at any time through March 29, 2006, the date of his decision. (Tr. 23.) On August 3, 2006, the Appeals Council denied Patsy Slater's request for a review of the ALJ's decision, thereby making it the final decision of the Commissioner. (Tr. 5-7.) Patsy Slater then filed her complaint initiating this appeal. (Document #2.) After consideration of the record as a whole, the Court finds that the decision of the Commissioner is supported by substantial evidence.

At the time of the administrative hearing, Brandon was 17 years old, and was being home schooled. (Tr. 451.) In determining whether an SSI claimant under the age of 18 is under a disability, a three-step sequential evaluation process is used which is comparable to the five-step sequential evaluation process utilized for adults. *See* 20 C.F.R. § 416.924(a) (2006).

---

[2] The Hon. Don Curdie.

The first step is to determine whether the child is engaged in substantial gainful activity. *Id.* at § 416.924(b). If so, benefits are denied; if not, the evaluation continues to the next step. The second step is to determine whether the impairment or combination of impairments is severe, *i.e.*, more than a slight abnormality that causes no more than minimal functional limitations. *Id.* at § 416.924(c). If not, benefits are denied; if so, the evaluation continues. The third step is to determine whether the child has impairment(s) that meet, medically equal, or functionally equal in severity a listed impairment. *Id.* at § 416.924(d). If so, and if the duration requirement is met, benefits are awarded; if not, benefits are denied.

The ALJ found that Brandon had never engaged in substantial gainful activity. (Tr. 22.) He determined that she did have "severe" impairments, including fibromyalgia, migraine headaches, a personality disorder, and an anxiety related disorder with depression. (Tr. 22.) Since Brandon had "severe" impairments, but they did not meet or medically equal a listing, it became necessary for the ALJ to determine if the impairments functionally equaled a listing. 20 C.F.R. § 416.926a(a) (2006). The ALJ found that she did not have any impairment or combination of impairments that met or medically equaled a listing or that functionally equaled a listed impairment. (Tr. 22-23.) Consequently, he found that she was not disabled. (Tr. 23.)

The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (the Welfare Reform Act), Pub. L. No. 104-193, 110 Stat. 2105 (codified as amended in scattered sections of 42 U.S.C.), required implementing regulations. The final regulations made a change from the interim final regulations in the manner of determining functional equivalence. There is now a single method of evaluating functional equivalence based only on domains of functioning. Under this regulation, an impairment is functionally equivalent to a listing when the impairment results in

"marked" limitations in two domains of functioning or an "extreme" limitation in one domain of functioning. 20 C.F.R. § 416.926a(a).

A "marked" limitation in a domain seriously interferes with a child's ability independently to initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation also is a limitation that is "more than moderate" but "less than extreme." *Id*. It is the equivalent of functioning expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. *Id*.

An "extreme" limitation in a domain very seriously interferes with a child's ability to independently initiate, sustain, or complete activities. *Id*. at § 416.926a(e)(3)(i). "Extreme" limitation also means a limitation that is "more than marked." *Id*. It is the rating given to the worst limitations. *Id.* It is the equivalent of functioning expected on standardized testing with scores that are at least three standard deviations below the mean. *Id*. The domains of functioning are: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1)(i-vi). These domains are described in greater detail, with examples, in the regulations. *Id*. at § 416.926a(g)-(l).

The ALJ found that Brandon had "less than marked" limitation of function in two domains, interacting and relating with others and health and physical well-being. (Tr. 20, 21.) Patsy Slater contends that Brandon had "marked" limitation of function in each of these domains. (Pl.'s Br. 14-20.) A more detailed description of "interacting and relating with others" in the regulations is as follows:

(i) *Interacting and relating with others*. In this domain, we consider how well you initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others.

(1) *General*. (i) Interacting means initiating and responding to exchanges with other people, for practical or social purposes. You interact with others by using facial expressions, gestures, actions, or words. You may interact with another person only once, as when asking a stranger for directions, or many times, as when describing your day at school to your parents. You may interact with people one-at-a-time, as when you are listening to another student in the hallway at school, or in groups, as when you are playing with others.

(ii) Relating to other people means forming intimate relationships with family members and with friends who are your age, and sustaining them over time. You may relate to individuals, such as your siblings, parents or best friend, or to groups, such as other children in childcare, your friends in school, teammates in sports activities, or people in your neighborhood.

(iii) Interacting and relating require you to respond appropriately to a variety of emotional and behavioral cues. You must be able to speak intelligibly and fluently so that others can understand you; participate in verbal turntaking and nonverbal exchanges; consider others' feelings and points of view; follow social rules for interaction and conversation; and respond to others appropriately and meaningfully.

(iv) Your activities at home or school or in your community may involve playing, learning, and working cooperatively with other children, one-at-a-time or in groups; joining voluntarily in activities with the other children in your school or community; and responding to persons in authority (e.g., your parent, teacher, bus driver, coach, or employer).

(2) *Age group descriptors.*

\* \* \*

(v) *Adolescents (age 12 to attainment of age 18).* By the time you reach adolescence, you should be able to initiate and develop friendships with children who are your age and to relate appropriately to other children and adults, both individually and in groups. You should begin to be able to solve conflicts between yourself and peers or family members or adults outside your family. You should recognize that there are different social rules for you and your friends and for acquaintances or adults. You should be able to intelligibly express your feelings, ask for assistance in getting your needs met, seek information, describe events, and tell stories, in all kinds of environments (e.g., home, classroom, sports, extra-curricular activities, or part-time job), and with all types of people (e.g., parents, siblings, friends, classmates, teachers, employers, and strangers).

(3) *Examples of limited functioning in interacting and relating with others.* The following examples describe some limitations we may consider in this domain. Your limitations may be different from the ones listed here. Also, the examples do not necessarily describe a "marked" or "extreme" limitation. Whether an example

5

applies in your case may depend on your age and developmental stage; e.g., an example below may describe a limitation in an older child, but not a limitation in a younger one.  As in any case, your limitations must result from your medically determinable impairment(s).  However, we will consider all of the relevant information in your case record when we decide whether your medically determinable impairment(s) results in a "marked" or "extreme" limitation in this domain.
        (i) You do not reach out to be picked up and held by your caregiver.
        (ii) You have no close friends, or your friends are all older or younger than you.
        (iii) You avoid or withdraw from people you know, or you are overly anxious or fearful of meeting new people or trying new experiences.
        (iv) You have difficulty playing games or sports with rules.
        (v) You have difficulty communicating with others; e.g., in using verbal and nonverbal skills to express yourself, carrying on a conversation, or in asking others for assistance.
        (vi) You have difficulty speaking intelligibly or with adequate fluency.

20 C.F.R. § 416.926a.

The ALJ noted the report from one of Brandon's eighth grade teachers.  The teacher did not observe any significant problem with Brandon's social functioning.  (Tr. 79.)  She explained her observation: "I have never witnessed Brandon having any problems in a social situation."  (Tr. 79.)  She concluded, "In the time that I had Danielle in my classroom, she showed absolutely no signs of having any sort of disability.  She behaved and responded exactly the way that typical eighth graders do."  (Tr. 81.)

The ALJ also noted that Brandon's treating psychiatrist reported that, with changes in medication, she got along well with others.  (Tr. 20, 420-25.)  He further noted that she had a boyfriend and that she was planning to go out of state to college or the Job Corps.  (Tr. 20.)  At one point, she played soccer.  (Tr. 146.)  Patsy Slater stated in a form report in September 2003 that Brandon had friends her own age, could make new friends, generally got along well with her and other adults, and generally got along with brothers, sisters and school teachers.  (Tr. 94, 99.)

6

Substantial evidence supports the ALJ's determination that Brandon had "less than marked" limitation of function in the domain of interacting and relating with others.

A more detailed description of "health and physical well-being" in the regulations is as follows:

> (l) *Health and physical well-being.* In this domain, we consider the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on your functioning that we did not consider in paragraph (j) of this section. When your physical impairment(s), your mental impairment(s), or your combination of physical and mental impairments has physical effects that cause "extreme" limitation in your functioning, you will generally have an impairment(s) that "meets" or "medically equals" a listing.
> (1) A physical or mental disorder may have physical effects that vary in kind and intensity, and may make it difficult for you to perform your activities independently or effectively. You may experience problems such as generalized weakness, dizziness, shortness of breath, reduced stamina, fatigue, psychomotor retardation, allergic reactions, recurrent infection, poor growth, bladder or bowel incontinence, or local or generalized pain.
> (2) In addition, the medications you take (e.g., for asthma or depression) or the treatments you receive (e.g., chemotherapy or multiple surgeries) may have physical effects that also limit your performance of activities.
> (3) Your illness may be chronic with stable symptoms, or episodic with periods of worsening and improvement. We will consider how you function during periods of worsening and how often and for how long these periods occur. You may be medically fragile and need intensive medical care to maintain your level of health and physical well-being. In any case, as a result of the illness itself, the medications or treatment you receive, or both, you may experience physical effects that interfere with your functioning in any or all of your activities.
> (4) *Examples of limitations in health and physical well-being.* The following examples describe some limitations we may consider in this domain. Your limitations may be different from the ones listed here. Also, the examples do not necessarily describe a "marked" or "extreme" limitation. Whether an example applies in your case may depend on your age and developmental stage; e.g., an example below may describe a limitation in an older child, but not a limitation in a younger one. As in any case, your limitations must result from your medically determinable impairment(s). However, we will consider all of the relevant information in your case record when we decide whether your medically determinable impairment(s) results in a "marked" or "extreme" limitation in this domain.

(i) You have generalized symptoms, such as weakness, dizziness, agitation (e.g., excitability), lethargy (e.g., fatigue or loss of energy or stamina), or psychomotor retardation because of your impairment(s).

(ii) You have somatic complaints related to your impairments (e.g., seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfort, nausea, headaches, or insomnia).

(iii) You have limitations in your physical functioning because of your treatment (e.g., chemotherapy, multiple surgeries, chelation, pulmonary cleansing, or nebulizer treatments).

(iv) You have exacerbations from one impairment or a combination of impairments that interfere with your physical functioning.

(v) You are medically fragile and need intensive medical care to maintain your level of health and physical well-being.

(m) *Examples of impairments that functionally equal the listings.* The following are some examples of impairments and limitations that functionally equal the listings. Findings of equivalence based on the disabling functional limitations of a child's impairment(s) are not limited to the examples in this paragraph, because these examples do not describe all possible effects of impairments that might be found to functionally equal the listings. As with any disabling impairment, the duration requirement must also be met (see §§ 416.909 and 416.924(a)).

(1) Documented need for major organ transplant (e.g., liver).

(2) Any condition that is disabling at the time of onset, requiring continuing surgical management within 12 months after onset as a life-saving measure or for salvage or restoration of function, and such major function is not restored or is not expected to be restored within 12 months after onset of this condition.

(3) Frequent need for a life-sustaining device (e.g., central venous alimentation catheter), at home or elsewhere.

(4) Effective ambulation possible only with obligatory bilateral upper limb assistance.

(5) Any physical impairment(s) or combination of physical and mental impairments causing complete inability to function independently outside the area of one's home within age-appropriate norms.

(6) Requirement for 24-hour-a-day supervision for medical (including psychological) reasons.

(7) Infants weighing less than 1200 grams at birth, until attainment of 1 year of age.

(8) Infants weighing at least 1200 but less than 2000 grams at birth, and who are small for gestational age, until attainment of 1 year of age. (*Small for gestational age* means a birth weight that is at or more than 2 standard deviations below the mean or that is below the 3rd growth percentile for the gestational age of the infant.)

(9) Major congenital organ dysfunction which could be expected to result in death within the first year of life without surgical correction, and the impairment is

>expected to be disabling (because of residual impairment following surgery, or the recovery time required, or both) until attainment of 1 year of age.
>(10) Gastrostomy in a child who has not attained age 3.

20 C.F.R. § 416.926a(l)-(m).

Brandon underwent a general physical examination in December of 2003. (Tr. 156-60.) Her range of motion in the spine and all extremities was within normal limits; her cranial nerves were intact. (Tr. 158.) There was no evidence of muscle weakness or atrophy, and no sensory abnormalities were noted. Gait and coordination were normal. She could stand and walk without assistive device, walk on her heels and toes, and squat and arise from a squatting position. Her circulation was normal. (Tr. 159.) Brandon had received periodic medical treatment and been prescribed various medications, but she had not required frequent or extensive medical treatment, nor had she required emergency room treatment, surgery, or extended inpatient hospitalization. (Tr. 21.) She told one doctor that she could walk two to three miles. (Tr. 156.) She enjoyed horseback riding and taking care of animals. (Tr. 146.) Substantial evidence supports the ALJ's conclusion that Brandon had "less than marked" limitation of function in the domain of health and well-being.

Finally, Patsy Slater contends that the ALJ's credibility assessment was inadequate. (Pl.'s Br. 20-21.) The ALJ considered Brandon's subjective complaints in light of *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984).[3] (Tr. 19-21.)

---

[3] The ALJ also cited Social Security Ruling 96-7p. (Tr. 21) That ruling tracks *Polaski* and 20 C.F.R. § 416.929(c)(3) (2006) and elaborates on them.

"'The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered.'" *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006) (quoting *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004)).

There is little objective support in the record for Brandon's claim of disability. No evaluations showed medical conditions that were disabling. Furthermore, inconsistencies between the medical evidence and Brandon's subjective complaints gave reason to discount those complaints. *See Richmond v. Shalala*, 23 F.3d 1441, 1443-44 (8th Cir. 1994).

The lack of medical evidence in support of Brandon's allegations, the lack of restriction placed on Brandon by her physicians, the extent of Brandon's daily activities, and her functional capabilities support the ALJ's decision to discount Brandon's subjective complaints. *See, e.g.*, *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (stating that the ALJ may discount subjective complaints "if there are inconsistencies in the record as a whole"); *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) ("The ALJ may discount complaints of pain if they are inconsistent with the evidence as a whole."); *Dodson v. Chater*, 101 F.3d 533, 534 (8th Cir. 1996) ("[A]fter full consideration of all of the evidence relating to subjective complaints, the [ALJ] may discount those complaints if there are inconsistencies in evidence as a whole."). Substantial evidence supports the ALJ's credibility determination.

It is not the task of this Court to review the evidence and make an independent decision as to whether Brandon is disabled. Neither may the Court reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence on the record as a whole that supports the decision of the ALJ. *E.g.*, *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).

The Court has reviewed the entire record, including the briefs, the ALJ's decision and the transcript of the hearing. There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427; *see also Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Commissioner's decision is not based on legal error.

THEREFORE, the Court hereby affirms the final determination of the Commissioner and dismisses Patsy Slater's complaint with prejudice.

IT IS SO ORDERED.

DATED this 30th day of May, 2007.

*J. Leon Holmes*
_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE